Charles Leroy **HAYNES**,
Plaintiff-Appellant,

v.

Hoyt C. **CUPP**, Superintendent, Oregon State Penitentiary, Defendant-Appellee.

No. 83–3863.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 9, 1984.

Resubmitted May 27, 1987.

Decided Sept. 2, 1987.

---

**8.** *See supra* note 3.

Terrance P. Gough, Eugene, Or., for plaintiff-appellant.

Robert E. Barton, Salem, Or., for defendant-appellee.

Before KENNEDY and FERGUSON, Circuit Judges, and INGRAM,* District Judge.

KENNEDY, Circuit Judge:

Charles Leroy Haynes appeals the district court's denial of his petition for writ of habeas corpus. He claims that state authorities placed him twice in jeopardy for the same offense, breached their plea agreement, and engaged in serious misconduct during the proceedings against him. We reject these contentions and affirm.

In 1978 Oregon indicted Haynes for murder.[1] The indictment alleged that he "intentionally cause[d] the death of Pamela Lee Bruno." Following denial of a suppression motion, he agreed to a stipulated facts trial on the murder charge.

The judge presiding over the stipulated facts trial found Haynes guilty of intentional murder and sentenced him to life imprisonment. The court of appeals affirmed, *State v. Haynes*, 40 Or.App. 129, 594 P.2d 436 (1979), but the Supreme Court of Oregon reversed, finding denial of the suppression motion improper. *State v. Haynes*, 288 Or. 59, 602 P.2d 272 (1979), *cert. denied*, 446 U.S. 945, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980).

In 1981 Oregon reindicted Haynes for murder. This time the indictment charged that he "intentionally cause[d] the death of Pamela Lee Bruno in the course of and in ... furtherance of committing and attempting to commit Rape and Sodomy in the First Degree ... having personally stabbed, dismembered, and killed [her]."

---

* Honorable William A. Ingram, United States District Judge, Northern District of California, sitting by designation.

1. Haynes was also indicted on a firearms possession charge. He concedes he was not tried on this charge, and it plays no part in our analysis.

Following a jury trial, he was convicted of intentional murder, acquitted of felony murder, and sentenced to life imprisonment.

The court of appeals affirmed, *State v. Haynes*, 56 Or.App. 592, 643 P.2d 424 (1982), and the state supreme court denied review, leaving his conviction intact. *State v. Haynes*, 293 Or. 235, 648 P.2d 852 (1982). Haynes then sought a writ of habeas corpus from the federal courts under 28 U.S.C. § 2254 (1982). Adopting the magistrate's recommendation, the district court declined to issue the writ. Haynes now appeals.

He first contends that he was subjected to multiple prosecutions for the same offenses, in violation of the double jeopardy clause. Specifically, he claims that he was prosecuted for aggravated murder and felony murder after being acquitted of those charges at his first trial. Whether the alleged violations resulted in injury redressible in the federal courts is unclear, for he was not convicted of either offense. He claims, however, that the presence of these charges adversely affected tactical decisions during his second trial. He does not document these decisions, and we remain unsure that his claim would entitle him to federal habeas corpus relief in any event. Because the record does not conclusively rebut his allegations of injury, however, we consider the substance of his double jeopardy claims.

Under Oregon law at the time, criminal homicide constituted murder when

 (a) it [was] committed intentionally by a person who [was] not under the influence of an extreme emotional disturbance; or

 (b) it [was] committed by a person acting either alone or with one or more persons, who commit[ed] or attempt[ed] to commit ... rape in the first degree ... or sodomy in the first degree.

Or.Rev.Stat. § 163.115(1) (1977). The sentence for murder, be it intentional, section 163.115(1)(a), or felony murder, section 163.115(1)(b), was life imprisonment.

 ■ A more severe punishment was set for the crime of aggravated murder, which was a criminal homicide in which

 (d) [t]he defendant personally committed the homicide in the course or in the furtherance of ... any sexual offense specified in ORS chapter 163.

Or.Rev.Stat. § 163.095(2)(d) (1977).[2] The sentence for this crime was life imprisonment with a mandatory period of incarceration of twenty years. Or.Rev.Stat. § 163.-105(2) (1977).

 ■ Intentional murder is a lesser included offense of aggravated murder. *Riley v. Cupp*, 56 Or.App. 467, 642 P.2d 333, 335, *review denied*, 293 Or. 146, 651 P.2d 143 (1982). Under prevailing double jeopardy principles, conviction of a lesser included offense precludes trial on the greater offense. *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). Thus if the state had tried Haynes for aggravated murder after his conviction for intentional murder, it likely would have violated the double jeopardy clause. *See id.* at 165 n. 5, 97 S.Ct. at 2225 n. 5 (distinguishing between retrial after conviction and retrial after reversal of conviction).

 ■ The state, however, did not try Haynes for aggravated murder at either the first or second trial. Though the resubmitted indictment would have supported an aggravated murder prosecution, the state did not proceed on that charge. The statutory reference at the foot of the resubmitted indictment is not clear on this point, but the ruling on the motion to dismiss, the course of the trial, and the verdict forms used by the jury all demonstrate that aggravated murder was never in issue.

 ■ Felony murder was in issue at the second trial, but lawfully so. A conviction for one offense may result in an implied acquittal of another, *Green v. United States*, 355 U.S. 184, 190, 78 S.Ct. 221, 225,

---

**2.** Aggravated murder is a substantive crime, not merely a sentencing provision. *See State v. Cohen*, 289 Or. 525, 614 P.2d 1156, 1157–58 (1980). Any suggestion that a trial for murder places a person in jeopardy for aggravated murder is, therefore, erroneous. An aggravated murder conviction requires an aggravated murder trial.

2 L.Ed.2d 199 (1957), but that did not occur here. A conviction may effect an acquittal of another offense only if the conviction "actually represents a resolution (in the defendant's favor) ... of some or all of the factual elements of the [other offense]." *United States v. Scott,* 437 U.S. 82, 97, 98 S.Ct. 2187, 2197, 57 L.Ed.2d 65 (1978) (quoting *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 571, 97 S.Ct. 1349, 1354, 51 L.Ed.2d 642 (1977)). A conviction after a plea of guilty and an agreement with the government does not necessarily produce such a resolution, because the judge considers the defendant's guilt or innocence only with respect to the specific charge in the agreement. *United States v. Barker,* 681 F.2d 589, 592 (9th Cir.1982). The same is true of the stipulated facts trial here. The judge considered Haynes' guilt or innocence only with respect to the intentional murder charge in the stipulation. He did not reach any conclusions about the felony murder charge, nor did he acquit and thereby determine facts in favor of the accused, nor did he find guilt of any lesser included offense of felony murder. As a result, the felony murder prosecution that followed did not contradict the earlier proceedings or offend the double jeopardy clause.

As it relates to aggravated murder, then, Haynes' double jeopardy claim fails because no prosecution for that offense occurred at any point. As it relates to felony murder, his claim fares no better, for the second prosecution was lawful.

Haynes next contends that prosecution for aggravated murder or felony murder violated his plea agreement. In view of our conclusion that no aggravated murder prosecution occurred, we need consider the argument only as it relates to felony murder.

■ Haynes claims the state agreed to forego a felony murder prosecution if he submitted to a stipulated facts trial on the intentional murder charge. The state, in contrast, claims it only agreed to refrain from seeking an enhanced sentence under the aggravated murder statute. As the agreement was not reduced to writing, we must reconstruct it from the record before us.

In establishing the terms of the agreement, we defer to the findings of the Oregon courts. *See Ricketts v. Adamson,* — U.S. ——, 107 S.Ct. 2680, 2683 n. 3, 97 L.Ed.2d 1 (1987). Their construction of the agreement must remain undisturbed unless it exceeds broad bounds of reasonableness. *Id.*

The Oregon courts accepted the state's construction of the agreement. The state trial court permitted the second indictment to stand, allowing trial on the felony murder charge, but ruled out efforts to enhance the penalty. State appellate review left that determination undisturbed.

Testimony from both camps supports the state's construction of the agreement. The assistant district attorney's testimony is straightforward: prosecution for felony murder remained permissible under the agreement. The defense attorney's testimony is more convoluted. Once deciphered, however, it too supports the state's construction.

The defense attorney testified that Haynes' sole objective was avoidance of an enhanced sentence with a mandatory period of confinement. He claimed the agreement accomplished this objective with dismissal of the felony murder charge. He must, however, have meant dismissal of the aggravated murder charge, for only that crime has an enhanced sentence. *See* Or. Rev.Stat. § 163.105(2). Given his objective, there is no reason to suppose he negotiated for dismissal of the felony murder charge, for it posed no risk of mandatory confinement.

It appears, therefore, that Haynes received the benefit of his bargain: a trial free from the risk of an enhanced sentence. That he also faced a felony murder prosecution is immaterial. In our view, and that of the Oregon courts, his agreement never contemplated dismissal of the felony murder charge.

Haynes' final contention is that prosecutorial misconduct deprived him of a fair trial. On this score, his arguments are twofold.

He claims that prosecutorial vindictiveness colored the proceedings against him.[3] Taking his cue from *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), he claims the state acted vindictively in prosecuting him for a more serious crime, aggravated murder, after his successful appeal. As we explained earlier, however, the state did not prosecute him for aggravated murder. The trigger for the *Blackledge* presumption, an increase in the charges, is therefore lacking. A showing of prosecutorial vindictiveness is surely possible without resort to the *Blackledge* presumption. However, Haynes has not produced evidence that convinces us the prosecutor's actions were the result of vindictiveness, rather than a different view of the plea agreement.

■ Haynes also charges the state with pursuing inconsistent theories of the case. Pointing to differences between his trial and that of a codefendant, he claims the state altered its position for the sole purpose of securing a conviction. It is true that the trials differed in emphasis. However, the underlying theory of the case, that all three defendants were equally culpable, remained consistent throughout. In view of this underlying consistency, the variations in emphasis are not cause for reversal.

Like his other claims, Haynes charges of prosecutorial misconduct are not sustained by the record. The judgment of the district court is therefore AFFIRMED.

3. Reference to this claim in the state proceedings is less than explicit. There is some doubt, therefore, that it is before us at all. *See Wainwright v. Sykes,* 433 U.S. 72, 86–87, 97 S.Ct. 2497, 2505–06, 53 L.Ed.2d 594 (1977); *Forman v. Smith,* 633 F.2d 634, 640 (2d Cir.1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1710, 68 L.Ed.2d 204 (1981).