**Gary James TAYLOR,
Petitioner–Appellant,**

v.

**Lawrence KINCHELOE,
Respondent–Appellee.**

No. 89–35687.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 7, 1990.

Decided Dec. 11, 1990.

Robert C. Boruchowitz, King County Public Defender's Office, Seattle, Wash., for petitioner-appellant.

John M. Jones, Asst. Atty. Gen., Olympia, Wash., for respondent-appellee.

Before WRIGHT, BEEZER and TROTT, Circuit Judges.

TROTT, Circuit Judge:

Gary James Taylor appeals the district court's denial of his petition for a writ of habeas corpus. We have jurisdiction under 28 U.S.C. § 2253 (1988), and we affirm.

## FACTS AND PROCEEDINGS BELOW

Lloyd and Lula Miller were murdered on August 21, 1974. The perpetrators shot them both in the head and burned down their home. Taylor and an associate were charged with the crimes. Taylor went to trial in 1975 on two counts of first-degree murder and one count of arson. After the jury was impaneled and sworn, and after the prosecutor's opening statement, Taylor entered into a plea agreement, and the trial was terminated.

Pursuant to the agreement, the prosecutor dropped the arson count and lowered one of the first-degree murder charges to second-degree murder. The trial judge accepted the plea to both first and second-degree murder and sentenced Taylor to two concurrent life terms. Several months later, however, Taylor convinced the state court of appeals to vacate the entire plea agreement on the ground he had not understood its consequences. The prosecutor responded by reinstating the original pre-plea indictment, and Taylor was tried again in January 1977. This time the jury convicted him of two counts of first-degree murder, and acquitted him of the arson charge. The judge who presided over the second trial sentenced Taylor to two *consecutive* life terms.

Taylor challenged his conviction in the state court of appeals, raising most of the claims he now advances. The court rejected his arguments. *State v. Taylor*, 22 Wash.App. 308, 589 P.2d 1250 (1979). The Washington State Supreme Court denied review on June 15, 1979. Taylor then filed a petition for a writ of habeas corpus in the district court on August 28, 1987. The magistrate issued a report recommending the petition be denied, which the district court adopted on July 6, 1989. On August 28, 1989, the district court issued an order denying Taylor's application for a certificate of probable cause. We reversed the denial of probable cause, and Taylor now brings this timely appeal.

## STANDARD OF REVIEW

■ We review de novo the district court's denial of a petition for a writ of habeas corpus. *Campbell v. Kincheloe*, 829 F.2d 1453, 1457 (9th Cir.1987), *cert. denied*, 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988). The district court's factual findings are reviewed for clear error. *Norris v. Risley*, 878 F.2d 1178, 1180 (9th Cir.1989). The state courts' factual findings are presumed correct when fairly supported by the record. 28 U.S.C. § 2254(d) (1988); *Sumner v. Mata*, 449 U.S. 539, 551, 101 S.Ct. 764, 771, 66 L.Ed.2d 722 (1981).

ANALYSIS

I

*The Double Jeopardy Claim*[1]

A. *Introduction*

Taylor claims a violation of the Double Jeopardy Clause based on the disparity between the counts to which he formerly pleaded guilty and the counts he subsequently was charged with and convicted of after his plea was vacated.

■ We note preliminarily that Taylor does not challenge the reinstatement of the first-degree murder charge to which he pleaded guilty under the original plea agreement.[2] Moreover, although Taylor asserts his trial on the arson charge violated double jeopardy, we do not reach this contention since the jury acquitted him of arson, rendering the issue moot. We are thus concerned only with Taylor's remaining first-degree murder charge, which was bargained down to second-degree murder under the terms of the original plea agreement and reinstated after Taylor had that plea agreement set aside.

If Taylor had entered his plea *before* the jury in his first trial was impaneled and sworn, his double jeopardy claim would be foreclosed. In *United States v. Barker*, 681 F.2d 589 (9th Cir.1982), the defendant was charged with first-degree murder, pleaded guilty to second-degree murder, had his plea agreement vacated, and was then tried and convicted of the original first-degree murder count. We held the defendant was not placed in double jeopardy merely because he was tried on a higher charge than that to which he had pleaded guilty. *Id.* at 591.

Taylor resurrects the same argument we rejected in *Barker*. He correctly notes that in *Green v. United States*, 355 U.S. 184, 198, 78 S.Ct. 221, 229, 2 L.Ed.2d 199 (1957), the Supreme Court held that a defendant convicted by a jury of a lesser-included offense may not subsequently be tried on the greater charge.[3] He then asserts *Green* supports the proposition that one who *pleads guilty* to a lesser-included offense, and then has his plea set aside, may not later be tried on the greater charge. The *Barker* court demonstrated the weakness of this syllogism. The Supreme Court's decision in *Green*, it reasoned, was founded upon the principle that when a jury has the option of convicting a defendant of either a lesser or a greater charge, it "implicitly acquits" him of the greater charge by convicting him of the lesser. In contrast to a jury verdict reached at the end of a full trial, a different deliberation occurs when a judge accepts a guilty plea. In approving the plea, the judge generally does not pass on the merits of any higher charges. Because the factual bases of greater charges are never examined, the defendant never stands "in peril" of being convicted of anything higher than that to which he pleads guilty; put simply, the plea bargain process does not force him to run the so-called "gauntlet." *Barker*, 681 F.2d at 591–92; *see also*, *Haynes v. Cupp*, 827 F.2d 435, 437–38 (9th Cir.1987); *United States v. Vaughan*, 715

---

1. Several of Taylor's claims arguably were not raised in the state courts. Normally, we must dismiss a petition containing both exhausted and unexhausted claims. *Rose v. Lundy*, 455 U.S. 509, 522, 102 S.Ct. 1198, 1205, 71 L.Ed.2d 379 (1982) (relying on 28 U.S.C. § 2254(b) (1988)). Under the circumstances of this case, however, where the issues are primarily ones of law and the State has failed in the district court and on appeal to point out the exhaustion defects, we believe the administration of justice would be better served by reaching the merits of Taylor's claims. *Granberry v. Greer*, 481 U.S. 129, 131, 107 S.Ct. 1671, 1673, 95 L.Ed.2d 119 (1987); *see also, Stone v. Godbehere*, 894 F.2d 1131, 1135 (9th Cir.1990) ("Where, as here, the state failed to raise an exhaustion argument before the district court, we may consider it

waived if the interests of comity, federalism and justice would be served.").

2. The general rule is that if a defendant has his plea to a certain count set aside on appeal, double jeopardy is not implicated by his subsequently being recharged and tried on that same count. *United States v. Kim*, 884 F.2d 189, 192 (5th Cir.1989); *United States v. Johnson*, 537 F.2d 1170, 1174 (4th Cir.1976); *United States v. Williams*, 534 F.2d 119 (8th Cir.), *cert. denied*, 429 U.S. 894, 97 S.Ct. 255, 50 L.Ed.2d 177 (1976).

3. The defendant in *Green* was convicted of second-degree murder, had his conviction reversed on appeal, and was then tried on a charge of first-degree murder.

F.2d 1373, 1376–77 (9th Cir.1983).[4]

Our conclusion in *Barker* is consistent with the Supreme Court's later decision in *Ricketts v. Adamson,* 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987). In *Ricketts,* the defendant originally pleaded guilty to second-degree murder. As part of the plea bargain, the defendant agreed to testify at a related trial. When the time came for him to testify, he refused, invoking the Fifth Amendment, and arguing the terms of the agreement did not call for his testimony. The Arizona Supreme Court held the defendant had violated the plea agreement. It therefore vacated his second-degree murder conviction and reinstated the first-degree murder charge contained in the original indictment. The defendant was then tried and convicted of first-degree murder.

The Supreme Court held the Double Jeopardy Clause was not offended when the defendant was tried on the higher charge. *Id.* at 8–11. The Court first assumed "that jeopardy attached at least when respondent was sentenced ... on his plea of guilty to second-degree murder." *Id.* at 8. It then concluded the vacation of his plea removed the bar to a second prosecution for first-degree murder. *Id.* In reaching this result, the Court relied on its opinion in *United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978), drawing the following parallel:

> At the close of all the evidence in *Scott,* the trial judge granted defendant's motion to dismiss two counts of the indictment against him on the basis of preindictment delay. This Court held that the Double Jeopardy Clause did not bar the Government from appealing the trial judge's decision, because "in a case such as this the defendant, by deliberately choosing to seek termination of the proceedings against him on a basis *unrelated to factual guilt or innocence of the offense of which he was accused,* suffers no injury cognizable under the Double Jeopardy Clause...." [citation omitted] The Court reasoned further that "the Double Jeopardy Clause ... does not relieve a defendant from the consequences of his *voluntary choice.*" ... The respondent in this case had a similar choice. He could submit to the State's request that he testify at the retrial, and in so doing risk that he would be providing testimony that pursuant to the agreement he had no obligation to provide, or he could stand on his interpretation of the agreement, knowing that if he were wrong, his breach of the agreement would restore the parties to their original positions and he could be prosecuted for first degree murder. Respondent chose the latter course, and the Double Jeopardy Clause does not relieve him from the consequences of that choice.

*Ricketts,* 483 U.S. at 11, 107 S.Ct. at 2686 (emphasis supplied).

The principle articulated in this passage applies forcefully to the facts of the present case.[5] Like defendants in *Ricketts* and *Scott,* Taylor chose of his own accord to challenge an aspect of the proceedings against him, and he did so on grounds wholly unrelated to his guilt or innocence. Although Taylor may not be as blameworthy as the defendant in *Ricketts,* who took a calculated risk of violating his plea agreement, he is certainly comparable to

---

**4.** The circuits that have spoken on this issue have endorsed the position taken in *Barker. United States v. Cruz,* 709 F.2d 111, 114 (1st Cir.1983); *Klobuchir v. Commonwealth of Pa.,* 639 F.2d 966, 969 (3rd Cir.), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 566, 70 L.Ed.2d 474 (1981); *Fransaw v. Lynaugh,* 810 F.2d 518, 524–26 (5th Cir.), *cert. denied,* 483 U.S. 1008, 107 S.Ct. 3237, 97 L.Ed.2d 742 (1987); *Hawk v. Berkemer,* 610 F.2d 445, 447 (6th Cir.1979); *United States v. Anderson,* 514 F.2d 583, 586–87 (7th Cir.1975); and *United States v. Williams,* 534 F.2d 119, 120–21 (8th Cir.), *cert. denied,* 429 U.S. 894, 97 S.Ct. 255, 50 L.Ed.2d 177 (1976). The District of Columbia and Tenth Circuits arguably have embraced this reasoning as well. *United States v. Myles,* 430 F.Supp. 98, 101–02, 102 n. 3 (D.D.C. 1977), *aff'd,* 569 F.2d 161 (D.C.Cir.1978); *United States v. Combs,* 634 F.2d 1295, 1297–98 (10th Cir.1980), *cert. denied,* 451 U.S. 913, 101 S.Ct. 1987, 68 L.Ed.2d 304 (1981).

**5.** The only significant difference between *Ricketts* and this case is that the plea agreement in *Ricketts* came during the process of jury selection rather than after impanelment. We address this distinction in a moment.

the defendant in *Scott*, who believed that certain charges against him should be dismissed because of preindictment delay. Both had legitimate collateral claims, yet neither should have expected to avert a guilt-innocence determination in succeeding on them.[6] The mere fact that the original charge was reinstated does not summon the spectre of double jeopardy.

Taylor's double jeopardy claim contains an additional nuance, however, which requires further analysis. Unlike *Barker* and *Ricketts*, the plea bargain in the present case occurred after the jury was sworn and the prosecutor had made an opening statement. The government ignores this distinction; Taylor makes only scattered references to it. The distinction, however, raises a question which is one of first impression in this circuit: Can a defendant be reindicted where the plea agreement, which later was set aside, was entered *after the jury in the first trial was impaneled and sworn?* Only the Fifth and Eleventh Circuits have addressed the question and both have concluded this added feature does not give rise to a double jeopardy violation. *Fransaw v. Lynaugh*, 810 F.2d 518, 525–26 (5th Cir.), *cert. denied*, 483 U.S. 1008, 107 S.Ct. 3237, 97 L.Ed.2d 742 (1987); *United States v. Baggett*, 901 F.2d 1546, 1549 (11th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 168, 112

L.Ed.2d 133 (1990). We find these decisions persuasive, as we explain below.

It is well settled that "an accused must suffer jeopardy before he can suffer double jeopardy." *Serfass v. United States*, 420 U.S. 377, 393, 95 S.Ct. 1055, 1065, 43 L.Ed.2d 265 (1975). The initial inquiry in double jeopardy analysis therefore is whether jeopardy has "attached," and if so, when. *Id.* at 388, 95 S.Ct. at 1062. In *Downum v. United States*, 372 U.S. 734, 737–38, 83 S.Ct. 1033, 1035, 10 L.Ed.2d 100 (1963), the Supreme Court held that in jury trials jeopardy attaches from the moment the jury is impaneled and sworn. In *Crist v. Bretz*, 437 U.S. 28, 37–38, 98 S.Ct. 2156, 2161–62, 57 L.Ed.2d 24 (1978), the Court applied this rule to the states via the Fourteenth Amendment, reasoning that it lies " 'at the core' of the Double Jeopardy Clause." (citations omitted). The basis for the Court's adoption of what would otherwise seem an arbitrary rule is that there is a "need to protect the interest of an accused in retaining a chosen jury." *Id.* at 35, 98 S.Ct. at 2161.

While it is thus undeniable that jeopardy "attached" in the present case when the jury was sworn, it does not necessarily follow that Taylor's second prosecution placed him in double jeopardy. For as the Supreme Court has stated: " '[T]he conclusion that jeopardy has attached begins,

---

**6.** In a closely related context, Judge Kaufman made an observation which captures the policy concerns at work here. In the case before Judge Kaufman, the defendant had argued on a due process theory of "prosecutorial vindictiveness" that the prosecutor should not be able to revive a higher charge which earlier had been dismissed pursuant to a plea arrangement defendant himself had had vacated. Judge Kaufman remarked:

> For us to hold that one in [defendant's] position may not be tried and sentenced upon the charge originally brought would encourage gamesmanship of a most offensive nature. Defendants would be rewarded for prevailing upon the prosecutor to accept a reduced charge and to recommend a lighter punishment in return for a guilty plea, when the defendant intended at the time he entered that plea to attack it at some future date.... Indeed, any reason the defendant could conceive for setting aside his plea and sentence would lose him little. If the defendant's argument were to prevail, then a trial on the lesser

charge only could result. The defendant would thus run no risks by this maneuver for his trial could end in acquittal, but if he should be convicted, he urges that he could not receive a sentence greater than that imposed on the guilty plea to the lesser offense. This is nothing more than a "heads-I-win-tails-you-lose" gamble. To frustrate this strategy, prosecutors would be restrained from entering plea bargains, thereby adding further to the staggering burdens of our criminal courts, and judges would become more rigid in exercising their discretion in favor of permitting withdrawal of a guilty plea. This would hardly enhance the administration of criminal justice.

*United States ex rel. Williams v. McMann*, 436 F.2d 103, 106–07 (2nd Cir.1970), *cert. denied*, 402 U.S. 914, 91 S.Ct. 1396, 28 L.Ed.2d 656 (1971) (footnote omitted). We do not mean to imply that Taylor concocted such a scheme in this case. We are concerned only about the incentives an opposite holding would create for future defendants.

rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial.'" *Serfass,* 420 U.S. at 390, 95 S.Ct. at 1064 (*quoting Illinois v. Somerville,* 410 U.S. 458, 467, 93 S.Ct. 1066, 1072, 35 L.Ed.2d 425 (1973)).[7]

The Fifth Circuit in *Fransaw* confronted a case similar to our own. In *Fransaw,* the defendant entered a plea agreement after the jury had been sworn and the prosecution had begun its case-in-chief. Pursuant to the agreement, the prosecutor dismissed one of the charges in the indictment. The defendant subsequently contested the validity of the plea at his sentencing hearing and was permitted to withdraw it. The prosecution then reinstated the original indictment, including the dismissed charge, prompting the defendant to assert a double jeopardy violation. The Fifth Circuit recognized jeopardy attached when the jury in the first trial was sworn, but held there was no *double* jeopardy violation when the prosecutor revived the original indictment. *Fransaw,* 810 F.2d at 528–29.

■ The court first examined cases holding that if a plea is entered and aborted *before trial,* the prosecutor may reinstate the original indictment. It then observed:

> [W]e discern in the[se] cases a judicial regard for fairness, namely, a defendant should not be able to reject a plea bargain and then erect the shield of double jeopardy to the revived counts. This concern for fairness (and for the integrity of the plea bargaining process) is equally compelling when the plea is entered and abandoned *after trial begins.*

*Id.* at 526 (emphasis supplied). We agree with this statement. The fact that a trial

has begun adds little to the double jeopardy calculus.

The *Fransaw* court also based its decision on Supreme Court precedent, relying principally on cases finding no double jeopardy problem with retrials following mistrials, where the mistrial was not deliberately caused by the prosecutor.[8] The court reasoned:

> [Defendant's] withdrawal of his guilty plea is analogous to these situations. Like the defendant who abandons the possibility of acquittal in the first proceeding by requesting a mistrial, [defendant] voluntarily surrendered the plea bargain's refuge against prosecution on the [formerly dismissed count]. *Crist v. Bretz* emphasizes that jeopardy attaches when a jury is impaneled because of "the need to protect the interest of the accused in retaining a chosen jury." 98 S.Ct. at 2161. But [defendant] sought out the state after appearing before his chosen jurors and entered an arrangement designed to insulate him from what he feared would be their unfavorable reaction to his case.

*Id.* at 528; *see also, Baggett,* 901 F.2d at 1549. Taylor likewise abandoned his chosen jury when he accepted the plea agreement. In overturning his plea, he effectively placed himself back in the pretrial setting for purposes of double jeopardy.

Thus, at least in the situation where the prosecutor is not responsible for the withdrawal or vacation of a defendant's guilty plea, the defendant legitimately may be exposed to the original charges, though the plea was entered sometime after a trial began. This is the essence of the Court's holding in *Ricketts,* decided several months

---

7. For example, the Court in *Ricketts* assumed jeopardy attached when the defendant was sentenced on his guilty plea to second-degree murder, but nonetheless held the principle of *double* jeopardy was not implicated by his retrial.

8. A survey of the Supreme Court's double jeopardy decisions reveals that double jeopardy is not necessarily triggered by a retrial following a trial that was cut short. *Richardson v. United States,* 468 U.S. 317, 323–26, 104 S.Ct. 3081, 3084–86, 82 L.Ed.2d 242 (1984); *Oregon v. Kennedy,* 456 U.S. 667, 675–79, 102 S.Ct. 2083, 2089–

91, 72 L.Ed.2d 416 (1982); *United States v. Scott,* 437 U.S. 82, 98–101, 98 S.Ct. 2187, 2197–99, 57 L.Ed.2d 65 (1978); *Arizona v. Washington,* 434 U.S. 497, 503–06, 98 S.Ct. 824, 829–30, 54 L.Ed.2d 717 (1978); *Lee v. United States,* 432 U.S. 23, 33–34, 97 S.Ct. 2141, 2147, 53 L.Ed.2d 80 (1977); *United States v. Dinitz,* 424 U.S. 600, 611–12, 96 S.Ct. 1075, 1081–82, 47 L.Ed.2d 267 (1976); *Illinois v. Somerville,* 410 U.S. 458, 471, 93 S.Ct. 1066, 1073, 35 L.Ed.2d 425 (1973); *Gori v. United States,* 367 U.S. 364, 367–70, 81 S.Ct. 1523, 1525–27, 6 L.Ed.2d 901 (1961).

after *Fransaw.* We believe the principles announced in *Ricketts* apply with equal force to cases like the present one, where the jury is impaneled and sworn before the later-aborted plea agreement is entered. As the Supreme Court has said in the past, society has an "interest in giving the prosecution one complete opportunity to convict those who have violated its laws." *Arizona v. Washington,* 434 U.S. 497, 509, 98 S.Ct. 824, 832, 54 L.Ed.2d 717 (1978); *see also, Richardson v. United States,* 468 U.S. 317, 324, 104 S.Ct. 3081, 3085, 82 L.Ed.2d 242 (1984); *United States v. Scott,* 437 U.S. 82, 100, 98 S.Ct. 2187, 2198, 57 L.Ed.2d 65 (1978). The state of Washington did not somehow forfeit this opportunity when Taylor's guilty plea was set aside on appeal. Taylor's double jeopardy claim fails.

## II

### The Prosecutorial Vindictiveness Claim

■ Taylor contends the prosecutor's reinstatement of the original indictment, after Taylor had had his plea set aside, raises a presumption of "prosecutorial vindictiveness" implicating the Due Process Clause.[9] *See Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). We reaffirm our prior holding that, when a plea agreement is vacated, no presumption of vindictiveness arises when the prosecutor simply reinstates the indictment that was in effect before the plea agreement was entered. *Barker,* 681 F.2d at 593. As discussed earlier, the defendant in *Barker* withdrew her guilty plea and was then tried on the original pre-plea charges. After rejecting her double jeopardy claim, the

court also dismissed her theory of prosecutorial vindictiveness: "Returning Barker to the position she was in before she asserted, and then withdrew, her guilty plea did not enhance her risk of punishment and thus did not imply any retaliatory intent." *Id.* at 593; *accord, Haynes v. Cupp,* 827 F.2d 435, 439 (9th Cir.1987); *United States v. Rosales–Lopez,* 617 F.2d 1349, 1357 (9th Cir.1980), *aff'd on other grounds,* 451 U.S. 182, 101 S.Ct. 1629, 68 L.Ed.2d 22 (1981); *United States v. Snell,* 592 F.2d 1083, 1087–88 (9th Cir.), *cert. denied,* 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979); *United States v. Johnson,* 537 F.2d 1170, 1175 (4th Cir.1976); *United States v. Anderson,* 514 F.2d 583, 588 (7th Cir.1975) ("There is no appearance of retaliation when a defendant is placed in the same position as he was in before he accepted the plea bargain."). Thus, the case law is directly at odds with Taylor's contention.[10] His claim of prosecutorial vindictiveness is rejected.

## III

### The Judicial Vindictiveness Claim

■ Taylor ascribes the same improper motives to the judge who sentenced him as the prosecutor who reindicted him. He claims under the Due Process Clause that a presumption of vindictiveness arose when the judge, after a full trial and conviction on two counts of first-degree murder, determined that the life sentences on those counts should run consecutively rather than concurrently, thereby retreating from the concurrent sentence imposed by the judge who accepted Taylor's plea of guilty to first and *second*-degree murder charges.

---

**9.** Defendant also makes the related argument that the prosecutor's decision to ask for a *longer sentence* raises a presumption of vindictiveness. Since we find no such presumption arises from the prosecutor's decision to bring the original *charges,* it would hardly seem to matter that the prosecutor asked for the higher *sentence* appropriate to those charges.

**10.** Taylor relies on *Adamson v. Ricketts,* 865 F.2d 1011 (9th Cir.1988) (*en banc*), *cert. denied,* — U.S. —, 110 S.Ct. 3287, 111 L.Ed.2d 795 (1990), to support his claim. While *Adamson* involved the reinstatement of higher charges after a plea was set aside, the court's decision in

that case rested on its finding that special circumstances surrounding the reinstatement so strongly indicated *actual vindictiveness* as to raise a presumption of vindictiveness. *Id.* at 1018 nn. 6–7, 1019 ("In Adamson's case, there is a significant possibility of actual vindictiveness surrounding the State's decision to seek the death penalty, coupled with an apparent absence of legitimate reasons to justify it."). The court did *not* hold that such a presumption is raised in *all* cases where original charges are revived after a plea is vacated. *Barker* is distinguishable and therefore remains good law.

Taylor's claim here is meritless for several reasons.

In *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the defendant had received "a more severe punishment after conviction for the *same offense* upon retrial." *Id.* at 716 (emphasis supplied). The Court recognized that, when a judge increases a sentence after retrial, a defendant justifiably may fear the judge's decision was motivated by a desire to punish him for having appealed his earlier conviction. It therefore held:

> In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

*Id.* at 726, 89 S.Ct. at 2081. In a later decision the Court clarified that *Pearce* still permits judges to increase a sentence after an appeal and retrial based on "[c]onsideration of a criminal conviction obtained in the interim." *Wasman v. United States*, 468 U.S. 559, 569, 104 S.Ct. 3217, 3223, 82 L.Ed.2d 424 (1984). The Court reasoned broadly that, at a second sentencing, a judge is not literally bound (as *Pearce* implied) to consider only the *conduct* of the defendant since he was first sentenced. The judge may consider a variety of new *events* that have transpired, which have nothing to do with any intervening "conduct" of the defendant strictly speaking.

There was such an intervening event in this case. Taylor's increased sentence was imposed after he was convicted of a *greater crime* than the one to which he had earlier pleaded guilty. That circumstance alone justified the increased sentence. *United States ex rel. Williams v.*

*McMann*, 436 F.2d 103, 105 (2d Cir.1970) (no *Pearce* presumption "[g]iven this complete and obvious explanation for the longer sentence"), *cert. denied*, 402 U.S. 914, 91 S.Ct. 1396, 28 L.Ed.2d 656 (1971); *accord*, *United States v. Whitley*, 759 F.2d 327, 332–33 (4th Cir.), *cert. denied*, 474 U.S. 873, 106 S.Ct. 196, 88 L.Ed.2d 164 (1985).

Even if there had been no specific intervening event to justify the increased sentence, *Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 2202, 104 L.Ed.2d 865 (1989), holds that "no presumption of vindictiveness arises when the first sentence was based upon a guilty plea, and the second sentence follows a trial." The assumption underlying this decision is that sentences imposed after trial are very likely to be higher than those following guilty pleas, for the legitimate reason that after trial, the judge will have had a greater opportunity to examine evidence which reflects poorly on the defendant and which justifies greater punishment. As Justice Rehnquist commented, writing for an eight member majority, "the judge may gather a fuller appreciation of the nature and extent of the crimes charged [and defendant's] ... suitability for rehabilitation." *Id.* 109 S.Ct. at 2206. *Smith* applies squarely to the present case, where the second judge presided over Taylor's complete trial and thus had an opportunity to make observations that would support an increased sentence. No presumption of judicial vindictiveness arose in this case.

■ Taylor appears to recognize in his opening brief that *Smith* undercuts his claim, and therefore tries to demonstrate in scattered passages that there is evidence in the record supporting a theory of *actual* vindictiveness on the part of the judge. As he correctly points out, such a showing may be made where no formal presumption exists. *Smith*, 109 S.Ct. at 2206–07. However the burden is on the defendant to make such a showing. *Id.* at 2205. In this endeavor, Taylor points to the following "facts" which he says indicate the judge sentenced him out of vindictive motives: (1) the disparity between Taylor's and his co-defendant's sentences; (2) remarks the

judge made in advance of sentencing which suggest he formed an opinion early in the proceedings as to the sentence he would impose;[11] (3) the judge's condemnation of the murders as "execution" style slayings; (4) the judge's decision to place little emphasis on Taylor's positive progress reports; (5) the doubled sentence itself; and (6) the fact that some of the factors the judge cited in support of an increased sentence had been weighed previously by the first judge, who had arrived at a more lenient sentence calculation.

These circumstances do not suffice to show the judge was motivated by vindictiveness. The judge's description of the murders as "execution" style slayings actually supports the government's position, since it is obvious that a judge may consider the circumstances of the offense in making a sentencing decision. *Smith* is founded on the notion that this is exactly what we expect judges to do. The rest of the evidence is highly circumstantial. We thus agree with the state court of appeals, *Taylor*, 589 P.2d at 1254, and the district court that the record contains insufficient evidence of actual vindictiveness.

The record reveals that the judge based his sentencing decision on permissible grounds. The judge stated on the record that his decision was influenced by: (1) his evaluation of Taylor's testimony on the stand; (2) the testimony of prosecution witnesses; (3) his general observations of Taylor's conduct during the trial; and (4) his examination of the presentence reports.

Taylor's claim of actual judicial vindictiveness is meritless.

## IV

### *The Sixth Amendment Claim*

At the sentencing hearing held after Taylor's conviction, the judge stated he had been negatively impressed by certain conduct of Taylor which he had observed in a hallway adjoining the courtroom during an intermission in the trial.[12] Taylor seems to argue that the judge's observation of him was tantamount to taking evidence in the case, and that therefore his Sixth Amendment right to counsel was violated because his attorney was not present at the judge's side to counter the negative impression then being formed in the judge's mind.

Taylor cites several cases in support of his claim, none of which is persuasive authority for the proposition he is trying to establish. The cases he refers to all involve situations where defense counsel was absent during a critical stage of *formal court proceedings*. He cites no case holding that defense counsel must accompany a judge on strolls outside the courtroom in order for that judge permissibly to make out-of-court observations which affect his judgment with regard to sentencing. While judges as a general matter should not be overly influenced by out-of-court observations in making sentencing decisions, we hold the present circumstances do not give rise to a Sixth Amendment violation.[13]

11. At a pretrial hearing before the second trial, the parties raised the issue of what sentence might be expected in the event of a guilty verdict. In response, the judge intimated that he might be willing to impose a longer sentence than did the first judge. Questioning the defense attorney he said: "Do you mean because of a former judge who said that any sentences given run concurrently, instead of consecutive, that that binds the second judge on a retrial of the case?"

12. The conduct referred to was Taylor's interaction with other defendants he met in the hallway. The judge's remarks, addressed to defense counsel, are recorded as follows:
> Throughout the testimony, [Taylor] testified in a mild, meek voice like Mr. Milktoast. . . . But you will recall that I mentioned having

seen Mr. Taylor out in the hall while there were some repeater defendants sitting out in the hall waiting for Judge Roberts' courtroom in a matter he had pending, and Mr. Taylor had the voice of a platoon sergeant in directing them, and, "How are you, Man"?, and that sort of stuff. It didn't happen here in court; it happened out in the hall. But I think it's something I can consider, just like I consider all the information from the presentence report people.

13. Even if Taylor's position were correct as a matter of law, the facts contradict his claim. Although the judge made his observations outside of court, he later stated them on the record at the sentencing hearing, where defense counsel had ample opportunity to make a counter-argument.

## V

### *The Jury Instruction Claim*

█ Taylor contends two jury instructions read at his second trial were erroneous as a matter of state law and infected the course of his trial to such a degree that the Due Process Clause was offended. First, he asserts the instruction on aiding and abetting omitted the mens rea element of "shared intent." Second, he argues the instruction on duress misdefined that term and wrongly stated that it did not apply as a defense to the crime of felony murder.

To prevail on his claim, Taylor must demonstrate that the trial judge's instructions were erroneous and that they rendered his trial fundamentally unfair. *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977); *Van Pilon v. Reed,* 799 F.2d 1332, 1342 (9th Cir.1986); *Camitsch v. Risley,* 705 F.2d 351, 355 (9th Cir.1983).

The state court of appeals found that the relevant Washington law had been correctly applied. *Taylor,* 589 P.2d at 1254–55. The Washington State Supreme Court denied review. The district court agreed with the opinion of the state court of appeals. This circuit has held that deference to a state court's interpretation of its own laws "is suspended only upon a finding that the court's interpretation is untenable or amounts to a subterfuge to avoid federal review of a constitutional violation." *Oxborrow v. Eikenberry,* 877 F.2d 1395, 1399 (9th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 344, 107 L.Ed.2d 332 (1989); *McSherry v. Block,* 880 F.2d 1049, 1052–53, 1053 n. 3 (9th Cir.1989); *Knapp v. Cardwell,* 667 F.2d 1253, 1260 (9th Cir.), *cert. denied,* 459 U.S. 1055, 103 S.Ct. 473, 74 L.Ed.2d 621 (1982). These decisions are supported by the Supreme Court's opinions in *Mullaney v. Wilbur,* 421 U.S. 684, 691 n. 11, 95 S.Ct. 1881, 1886 n. 11, 44 L.Ed.2d 508 (1975), and *Radio Station WOW Inc. v. Johnson,* 326 U.S. 120, 129, 65 S.Ct. 1475, 1480, 89 L.Ed. 2092 (1945). *See* Wright, *Law of the Federal Courts* § 107, at 747 (4th ed. 1984).

Both interpretations at issue are tenable and there is no evidence of subterfuge. The instruction on aiding and abetting was only slightly ambiguous in describing state law. And, contrary to the position taken by Taylor, the clear terms of the state statute on duress make that defense unavailable when the crime charged is murder or felony murder.[14] Because Taylor does not show the instructions were erroneous, he does not pass the threshold stage of proving a due process violation.

## VI

### *The Newly Discovered Evidence Claim*

At the second trial, an expert for the prosecution opined that a fingerprint found at the murder scene was Taylor's. At some point after Taylor was convicted, a second expert informed the prosecutor that in fact the print evidence was too tenuous to support this finding. The prosecutor then reported the new results to Taylor's attorney, but apparently neglected to mention that a *third* expert had recently joined in the opinion of the second expert. Taylor now requests a new trial based on two due process theories, both of which are meritless.

Taylor argues there is a possibility the first expert lied when he gave his opinion on the print, and that the prosecutor knew or reasonably should have known that he was introducing perjured testimony. Of course, if this had occurred, and if there was a reasonable likelihood the jury's verdict was affected, the verdict would have to be set aside. *United States v. Bagley,* 473 U.S. 667, 678–80, 105 S.Ct. 3375, 3381–82, 87 L.Ed.2d 481 (1985); *United States v. Endicott,* 869 F.2d 452, 455 (9th Cir.1989). However, the state court of appeals found the expert and prosecutor were blameless and that therefore the erroneous "evidence was of the same category as though it had been discovered from a neutral source after trial." *Taylor,* 589 P.2d at 1256. The magistrate and district court agreed, and

---

**14.** *State v. Ng,* 110 Wash.2d 32, 750 P.2d 632, 636 (1988) (discussing the old duress statute which governed at the time of Taylor's crime and the new duress statute, and observing that both are inapplicable where the crime charged is murder or felony murder).

there is nothing in the record to contradict their findings.

 Even if there was prosecutorial misconduct involved in the introduction of the fingerprint evidence, Taylor has not shown the jury verdict was thereby affected. The reason for this is simple: Taylor testified at trial that he *was* present at the crime scene, where the contested print was discovered; in fact, he admitted he helped move the dead body of one of the victims. As the state court of appeals observed, Taylor's presence at the scene was conceded, and thus the fingerprint evidence was inconsequential. *Taylor*, 589 P.2d at 1256.

Taylor rather weakly contends the prosecutor knowingly withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 86, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), when he failed to inform Taylor's counsel of the *third* expert's finding. Revelation of this third finding would have added little to the sum total of Taylor's knowledge concerning the fingerprint evidence. In addition, it would not materially have enhanced his ability to challenge his conviction, since, as stated above, the effect of the fingerprint evidence was purely cumulative given that Taylor placed himself at the scene of the crime. We are therefore unpersuaded that a *Brady* violation occurred.

The district court's decision denying Taylor's habeas corpus petition is

AFFIRMED.