968 F.2d 1221
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Patrick S. MALONE, Petitioner-Appellant,
v.
James ROWLAND, et. al., Respondent-Appellee.
 No. 91-15778.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 12, 1992.*
Decided July 14, 1992.
 
 Before ALARCON, HALL and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Patrick Malone appeals the district court's denial of his petition for habeas corpus. Malone, who is currently serving a sentence of seventeen years and eight months in California state prison for attempted murder, assault with a deadly weapon, attempted kidnapping, hit and run driving, possession of a silencer, and taking a vehicle without consent, claims his incarceration violates his rights under the Double Jeopardy Clause, the Sixth Amendment, and the Equal Protection Clause of the Fourteenth Amendment. The district court had jurisdiction pursuant to 28 U.S.C. § 2254. We have jurisdiction over this timely filed appeal pursuant to 28 U.S.C. § 2253. We affirm.
 
 
 3
 * We first consider Malone's claim that jeopardy attached at the time the trial court accepted his plea of no contest, and that consequently, vacating the plea and forcing him to go to trial on all counts violated his right not to be placed twice in jeopardy.
 
 
 4
 When a federal court evaluates the effect of a plea agreement on a defendant's double jeopardy rights, a state appellate court's construction of plea agreement must remain undisturbed unless it exceeds the "broad bounds of reasonableness." Ricketts v. Adamson, 483 U.S. 1, 6 n. 3 (1987); Haynes v. Cupp, 827 F.2d 435, 437 (9th Cir.1987).
 
 
 5
 Here, the court of appeal concluded that Malone's challenge to his plea under Cal.Penal Code § 654 fell squarely within the rule of In re Troglin, 124 Cal.Rptr. 234 (Cal.App.1975).
 
 
 6
 In Troglin, as in this case, the court had options available to it when it accepted the plea agreement. Here the trial judge, both counsel and appellant agreed the court could sentence up to 11 years. Obviously that was an important consideration where a count of attempted murder was being dismissed. In each case the defendant attempted to reduce those options after the negotiated pleas. Each court was misled, and to have acquiesced in appellant's belated assertion would have permitted a fraud on the court.
 
 
 7
 Court of Appeals Opinion at 19-20.
 
 
 8
 The court of appeal's interpretation of the agreement and of California law does not exceed the bounds of reasonableness. During the plea hearing at which the court accepted the agreement, Malone gave no indication that he believed the trial court's power to impose an eleven year sentence was subject to challenge. And the record shows that the trial court believed it was not. Troglin plainly holds that a defendant who benefits from the terms of a plea bargain gives up his right to later challenge that bargain as a violation of section 654, and that if he does attempt such a challenge, the attempt may be properly viewed as a fraud on the court. Under these circumstances, the trial court had an absolute right to vacate the plea. Because, under California law, Malone's challenge to the plea agreement opened the door for the trial court to vacate the agreement, the double jeopardy bar was removed. See Adamson, 483 U.S. at 8, 11.
 
 II
 
 9
 We next consider whether Malone's right to effective counsel was violated when his attorney's alleged "conflict" prevented him from arguing that the trial court should have reduced Malone's sentence pursuant to section 654, and that the court had no power to vacate the plea.
 
 
 10
 Counsel's actual conflict of interest may deprive a defendant of adequate legal assistance, but prejudice will be presumed only if "the defendant demonstrates that ... an 'actual conflict of interest adversely affected his lawyer's performance.' " Strickland v. Washington, 466 U.S. 668, 692 (1984) (quoting Cuyler v. Sullivan, 446 U.S. 335, 350, 348 (1980)) (emphasis added). It is defendant's burden to establish that a conflict did indeed exist. Sullivan, 446 U.S. at 350. There is no evidence in this record that counsel had an "actual" conflict of interest. Rather, the record shows only counsel's naked assertions that such a conflict existed. Because Malone has not satisfied his burden, we will not presume prejudice.
 
 
 11
 Because he may not benefit from the presumption of prejudice, Malone must show not only that his counsel was deficient, but that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The trial court was adamant about its understanding of the plea agreement, and its view that no argument was going to convince it to go through with the plea. "I just don't feel that [argument] would be of any substantial assistance to the Court.... I tell you what was in my mind, what I understood, and that has not been followed up, ... contrary to ... my understanding.... [Y]our argument is not going to change my understanding." Plainly, the court accepted the plea based on its understanding that it could sentence Malone to eleven years, and later vacated the plea when it became clear that there had in fact been no such agreement among the parties. There is no reasonable probability that, had counsel argued the point, he would have convinced the judge that the judge was misapprehending his own understanding of the agreement. Consequently, Malone cannot establish a violation of his Sixth Amendment right.
 
 III
 
 12
 Next we consider Malone's claim that the prosecutor used his peremptory challenges to systematically exclude Mexican American jurors from Malone's petit jury in violation of Malone's Sixth and Fourteenth Amendment rights to a jury drawn from a representative cross-section of the community.
 
 
 13
 and
 
 
 14
 Malone's Sixth Amendment argument is easily dismissed. The
 
 
 15
 Sixth Amendment requirement that juries be drawn from a
 
 
 16
 venire representing a fair cross section of the community
 
 
 17
 does not extend to the petit juries that are chosen from
 
 
 18
 those venires. Holland v. Illinois, 493 U.S. 474, 476 (1990).
 
 B
 
 19
 Although Malone is not a Mexican American, and thus is not
 
 
 20
 part of the group whose removal he seeks to challenge, he
 
 
 21
 has standing to bring a claim that Mexican Americans were
 
 
 22
 excluded from the jury in violation of their Fourteenth
 
 
 23
 Amendment rights under Batson v. Kentucky, 476 U.S. 79
 
 
 24
 (1986). See Powers v. Ohio, 111 S.Ct. 1364, 1371
 
 
 25
 (1991) (criminal defendant can raise the third-party equal
 
 
 26
 protection claims of jurors excluded by the prosecution
 
 
 27
 because of their race).
 
 
 28
 To establish a prima facie case of discrimination, a
 
 
 29
 defendant must show that the prosecutor exercised his
 
 
 30
 peremptory challenges to remove from the venire members of a
 
 
 31
 cognizable racial group, and he must show facts that "raise
 
 
 32
 an inference that the prosecutor used [his peremptories] to
 
 
 33
 exclude the veniremen from the petit jury on account of
 
 
 34
 their race." Batson, 476 U.S. at 96
 
 
 35
 . Here, the prosecutor used four of his five peremptories
 
 
 36
 to exclude jurors with Spanish surnames--Sanchez, Rodriguez,
 
 
 37
 Esposito, and Hernandez. Though there is nothing on the
 
 
 38
 record to show that these jurors were Mexican American, or
 
 
 39
 that the prosecutor thought they were Mexican American, the
 
 
 40
 prosecutor's use of four out of five peremptories to
 
 
 41
 challenge individuals with Hispanic surnames is sufficient
 
 
 42
 to establish a prima facie case of discrimination against
 
 
 43
 Hispanic jurors. See Hernandez v. New York, 111 S.Ct. 1859, 1865
 
 
 44
 (1991). Nevertheless, we find no Batson violation.
 
 
 45
 The prosecutor met the burden assigned to him under Batson
 
 
 46
 by articulating a race neutral justification for his
 
 
 47
 action. "A neutral explanation ... means an explanation
 
 
 48
 based on something other than the race of the juror....
 
 
 49
 Unless a discriminatory intent is inherent in the
 
 
 50
 prosecutor's explanation, the reason offered will be deemed
 
 
 51
 race neutral." Id. at 1866. When asked by the trial judge
 
 
 52
 about his use of peremptory challenges to exclude jurors
 
 
 53
 with Hispanic surnames, the prosecutor explained that "some
 
 
 54
 of these people I have excused I believe to have been
 
 
 55
 related to the families of some of those people I have
 
 
 56
 personally prosecuted." The prosecutor did not exclude
 
 
 57
 these jurors because they were Hispanic. See Hernandez, 111 S.Ct. at 1867-68.
 
 
 58
 The trial court accepted this explanation, and concluded
 
 
 59
 that the prosecutor had not acted with discriminatory
 
 
 60
 intent. A trial court's finding regarding discriminatory
 
 
 61
 intent is a finding of fact to which this court owes
 
 
 62
 deference. Id. at 1868-69
 
 
 63
 . The court's finding here was not clear error. The
 
 
 64
 prosecutor's justification of his peremptory challenges is
 
 
 65
 credible, especially in light of his acceptance of five
 
 
 66
 jurors with Hispanic surnames--Madriugo, Galvan, Trovao,
 
 
 67
 Caronas, and Flores--all of whom he could have removed with
 
 
 68
 the five peremptories that he did not use. Because we find
 
 
 69
 no discriminatory intent, we reject Malone's Batson challenge.
 
 IV
 
 70
 Finally, we consider whether the nine month delay between October 4, 1984, the day Malone's case was remanded to the trial court for a new trial following the appeal of his original conviction, and June 25, 1985, the day his trial began, violated Malone's Sixth Amendment right to a speedy trial. We must consider four factors in determining whether a speedy trial violation has occurred: the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 530-33 (1972).
 
 
 71
 Though a nine month delay between remitter and trial is lengthy, the remaining factors weigh in favor of the state. Most of the delay in this case was caused by a series of motions and continuances filed by Malone and his attorneys. These events were described in detail by the California Court of Appeal and need not be repeated here. See Court of Appeal Opinion at 4-8. To the extent that a delay of trial can reasonably be ascribed to defendant's pretrial motions, the delay will not be weighed against the state. United States v. Solomon, 753 F.2d 1522, 1527 (9th Cir.1985). Malone's conduct also precludes us from weighing his assertions of his right in his favor. See United States v. Loud Hawk, 474 U.S. 302, 314 (1985) (defendant's assertion of a speedy trial violation must be viewed in the light of the defendant's other conduct). Finally, there is no evidence that Malone suffered prejudice as a result of the delay. On balance, the four Barker factors weigh in favor of the conclusion that Malone was not denied his right to a speedy trial.
 
 
 72
 The order of the district court denying Appellant's petition for habeas corpus is AFFIRMED.
 
 
 
 *
 This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3