MR. JUSTICE WEBER
delivered the Opinion of the Court.
This case arises out of the District Court for the Thirteenth Judicial District, Yellowstone County. Mr. Magruder was convicted of felony assault and mitigated deliberate homicide, in a jury trial. He appeals. We affirm.
The issues are:
1. Did the District Court err by allowing the testimony of the victim’s daughter regarding the telephone call from Mr. Magruder to the victim?
2. Were Mr. Magruder’s proximate cause instructions properly rejected?
Mr. Magruder and the victim had become acquainted through a woman over whom they had a continuing disagreement. On the evening of June 4, 1987, Mr. Magruder placed a telephone call to the victim. The victim’s daughter, who originally answered the phone, testified at trial that her father seemed worried after the conversation and told her that he’d better be “packing a piece” because Mr. Magruder would be packing a piece and would be there later.
Two acquaintances of Mr. Magruder testified that they saw him driving his truck about 10 p.m. that evening. They both testified that Mr. Magruder’s truck was weaving on the road and up onto the curb. The male acquaintance testified that after he offered to drive Mr. Magruder to a bar, Mr. Magruder pointed a gun at him from his truck and followed him for several blocks. The second acquaintance *494 testified that she saw a gun pointed at them and that she feared Mr. Magruder would shoot them.
Several persons saw Mr. Magruder park his truck near the apartment where the victim and the woman lived. Mr. Magruder got out of his truck and attempted to buy cigarettes from one witness across the street. Mr. Magruder then got back into his truck. As he did so, the victim drove up. The victim walked quickly to the driver’s side of Mr. Magruder’s truck, where he spoke with Mr. Magruder for a few minutes. Several witnesses heard a shot fired, after which Mr. Magruder drove away. The victim lay on the ground dying from a shotgun blast to his abdomen. He had a gun tucked in the waistband of his pants. Shortly thereafter, Mr. Magruder was arrested and his shotgun was recovered.
Mr. Magruder testified in his own behalf. He stated that the victim approached his truck and asked him to step out, then grabbed his shotgun and was shot in the ensuing struggle over the gun. The jury convicted Mr. Magruder of felony assault as to the two acquaintances who offered him a ride and of mitigated deliberate homicide as to the victim. This appeal involves only the mitigated deliberate homicide conviction.
I
Did the District Court err by allowing the testimony of the victim’s daughter regarding the telephone call from Mr. Magruder to the victim?
The defense objects to the following testimony of the victim’s daughter:
“Q. Tell us how your father appeared when the phone call ended, please.
“A. He appeared very worried, very upset.
“Q. Did your father tell you the substance of the telephone call?
“MR. ADAMS: Object again on the grounds it is hearsay.
“THE COURT: The objection is overruled.
“A. He told me that Scott had told him —
“Q. Just answer ‘yes or no’ first. Did he tell you?
“A. Yes, he did.
“Q. And when did he do that?
“A. When he hung up the phone.
“Q. So, right after the telephone call?
“A. Yes, right after the telephone call.
*495 “Q. And he was very nervous and concerned?
“A. He was very worried, yes.
“Q. What did he tell you the phone call was about.
“A. Well, I had to ask him a few times. And he told me that Scott, that he was under the impression that Tina was there with Scott, and he was, and he said that Scott told him that he wasn’t trying to take his woman away from him, and that if there was any problems that they would settle their differences. And my dad said that he told him there was no problem. And he told him that he would be down later to settle their differences, and that he better be packing a piece because Scott was packing a piece. ,
“Q. It was your first statement that Scott said he would be down to settle their differences, meaning Scott Magruder?
“A. Yes.
“Q. And that he, Scott Magruder, would be packing a piece?
“A. Yes.
“Q. And that your father had better be packing one?
“A. Yes.
“Q. Did your father continue to seem worried?
“A. Yes, he did.”
The defense argues that the testimony about what the victim said and about what the victim said Mr. Magruder said is inadmissible hearsay. It asserts that the lower court erred in admitting this testimony.
Hearsay is a statement, not made by the declarant while testifying at the trial or hearing, which is offered in evidence to prove the truth of the matter asserted. Rule 801(c), M.R.Evid. Generally, hearsay is not admissible into evidence. Rule 802, M.R.Evid. However, a number of exceptions to this general rule are set forth in Rules 803 and 804, M.R.Evid. In review on appeal, determinations as to the admissibility of evidence will not be reversed unless the trial judge’s ruling represents an abuse of discretion. State v. Caryl (1975), 168 Mont. 414, 431, 543 P.2d 389, 398-99.
The District Court instructed the jury that the above testimony was
“not offered to prove the truth of the matter asserted, but rather to show the victim’s then existing state of mind. You are to consider the statements only in regard to the victim’s state of mind and for no other purpose.”
The purpose set forth by the judge suggests that the testimony as to *496 what the victim said would be admissible under the exception set forth at Rule 803(3), M.R.Evid.:
“Then-existing mental, emotional, or physical condition. A statement of the declarant’s then-existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed.”
The case which the dissent states parallels the facts here, United States v. Brown (D.C.Cir. 1973), 490 F.2d 758, differs from the present case in an important respect. In that case, the defendant raised no claim of self-defense. Brown, 490 F.2d at 780. The court in Brown acknowledged that such a defense would make a difference.
“The threshold requirement of admissibility of such hearsay statements of fear of defendant in homicide cases is some substantial degree of relevance to a material issue in the case. While there are undoubtedly a number of possible situations in which such statements may be relevant, the courts have developed three rather well-defined categories in which the need for such statements overcomes almost any possible prejudice. The most common of these involves defendant’s claim of self-defense as justification for the killing. When such a defense is asserted, a defendant’s assertion that the deceased first attacked him may be rebutted by the extrajudicial declarations of the victim that he feared the defendant, thus rendering it unlikely that the deceased was in fact the aggressor in the first instance.”
Brown, 490 F.2d at 767. At the first omnibus hearing, Mr. Magruder’s attorney stated that self-defense would be raised. At trial, defendant’s testimony was that the shooting occurred as the victim pulled on the muzzle of his gun. The jury was instructed on self-defense. Brown thus provides reasoning to allow the victim’s statements into evidence in the present case.
Under the District Court’s instruction, the testimony about what Mr. Magruder said to the victim was not offered to prove its truthfulness (that Mr. Magruder really would be carrying a gun), but only to show the victim’s state of mind. Under that instruction, then, the statement of Mr. Magruder to the victim was not hearsay because it was not offered in evidence to prove the truth of the matter asserted.
We hold that the District Court did not abuse its discretion in ad *497 mitting the daughter’s testimony for the purpose of showing the victim’s state of mind.
II
Were Mr. Magruder’s proximate cause instructions properly rejected?
Mr. Magruder offered four jury instructions on proximate causation. He argues that when the court refused to give those instructions, he was deprived of the opportunity for the jury to consider his theory that the victim’s death was a result of the victim’s own negligence.
Proximate cause is not a term which is generally used in criminal jury instructions under Montana’s Criminal Code of 1973. The Criminal Law Commission Comment to Section 45-2-201, MCA, which defines “cause” for purposes of the criminal code, states that problems created by concepts of proximate cause “should be faced as problems of the culpability required for conviction and not as problems of causation.” The Court is not able to envision a case under our present criminal code in which a proximate cause instruction would be appropriate.
If the instructions given to the jury fully and fairly convey the elements of criminal homicide, this Court must consider that the jury has been properly instructed. State v. Collins (1978), 178 Mont. 36, 45, 582 P.2d 1179, 1184. Instruction No. 5 given in this case stated that each element of the offense must be proven beyond a reasonable doubt. That instruction also defined “act,” “purposely,” “knowingly,” and “negligently.” Instruction No. 10 set forth the statutory definitions of deliberate homicide, mitigated deliberate homicide, and negligent homicide. Instructions No. 12, 13, and 14 set forth the elements of deliberate, mitigated deliberate, and negligent homicide. Instruction No. 24 stated that the jury should first consider whether the elements of deliberate homicide had been proven. If not, they should consider whether mitigated deliberate homicide had been proven. Finally, if the elements of mitigated deliberate homicide had not been proven, the jury was to consider the issue of negligent homicide. Since the jury found Mr. Magruder guilty of mitigated deliberate homicide, it never reached consideration of negligent homicide.
We conclude that the instructions given the jury in this case fully and fairly conveyed the elements of criminal homicide. We hold that *498 the refusal of Mr. Magruder’s proposed instructions on proximate cause was not error.
Affirmed.
MR. CHIEF JUSTICE TURNAGE and MR. JUSTICES HARRISON, McDONOUGH and GULBRANDSON concur.