No. 90-448

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

STATE OF MONTANA,

　　　　　Plaintiff and Respondent,

-vs-

JANICE McCORD,

　　　　　Defendant and Appellant.

FILED

JAN 1 6 1992

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

　　　　For Appellant:

　　　　　　Gary E. Wilcox argued, Billings, Montana

　　　　For Respondent:

　　　　　　Hon. Marc Racicot, Attorney General; Kathy Seeley
argued, Assistant, Helena, Montana
Dennis Paxinos, County Attorney; Curtis Bevolden,
Deputy, Billings, Montana

Submitted: November 5, 1991

Decided: January 16, 1992

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

A jury from the Thirteenth Judicial District Court, Yellowstone County, convicted Janice McCord, the defendant, of conspiracy to commit deliberate homicide in violation of § 45-4-102, MCA. Defendant appeals. We affirm.

Defendant raises the following issues for review:

(1) Did the District Court violate hearsay rules and defendant's right to confrontation by admitting testimony of Alan Foster's (Foster's) statements where Foster was not available to testify?

(2) Did the State's delay in processing swab tests constitute negligent suppression of exculpatory evidence, violate due process and require dismissal of the case?

On December 26, 1987, Russell McCord died of a gunshot wound through the temple. Defendant, the wife of Russell McCord, testified that she and Foster found her husband in his bed, covered with blood. Investigators did not find the murder weapon. The investigators found no signs of forced entry or theft of property at the residence. The wound was consistent with the caliber of a silver derringer owned by the decedent and formerly stored in the family safe at the McCord residence. That derringer was never located.

Defendant called 911 from their home. Emergency personnel testified that she told them that her husband was being medically treated for depression. The testimony established that statement was not true.

2

The prosecution established that in order to avoid delinquent federal tax debts, Russell McCord set up a family corporation to which various assets were transferred. The evidence established that money had been placed in the corporate bank account, but that the corporation had defaulted on payments owing on contracts for the purchase of property. The defendant, as treasurer, testified that she controlled the corporate finances and paid corporate bills, including making payments on a contract for deed on their residence. The evidence also established that the defendant was responsible for making payments on a contract for deed on a duplex property, which the McCords, together with Foster, had purchased. The evidence further established that the McCords and Foster had defaulted on a number of payments on the duplex contract and ultimately forfeited their interest in that duplex. In addition, the evidence established that the McCords received a notice of eviction on the family residence with such eviction to take place on December 27, 1987. The defendant did not tell Russell McCord of the default, forfeiture or the impending eviction.

Three days before the homicide, defendant wrote to the sellers under the contract requesting a delay in eviction from their residence. She pointed out that Russell McCord's brain cells were deteriorating, that he only had a few months to live, and that she would pay the delinquent obligation with his life insurance proceeds. The testimony established that the defendant's statements regarding her husband's illness were not true.

Prior to the shooting, in November 1987, someone took coins

from Russell McCord's collection, worth several thousand dollars. There was evidence to establish that Russell McCord suspected Foster or the defendant had removed the coins from the family safe.

The evidence established that Russell McCord had planned to hold an annual meeting of the family corporation on December 27, 1987, the day following his death. His plan had been to examine the corporate books, and discuss the missing coins. In addition, Russell McCord had disclosed his intention to require Foster to move out of the McCord home by January 1, 1988. At the time of the shooting, Foster had lived with the defendant and the decedent for almost eleven years. Dennis McCord testified that during that time, his mother, the defendant, and Foster were engaged in a long-term sexual affair.

On August 18, 1988, Foster was killed when he drove his pickup truck off U.S. Highway 212. While the death was officially ruled as an accident, a Montana Highway Patrol accident reconstruction expert, as well as an undersheriff who investigated the accident, testified that, in their opinion, Foster's death was a suicide. Dennis McCord testified that two days before Foster's death, he had told the defendant that she and Foster were going to be arrested for Russell McCord's murder.

The first issue concerns the testimony by several witnesses to a number of statements Foster made following Russell McCord's death. These will be discussed in further detail.

The defendant's second issue involves swabs which investigators took from the hands of the decedent, defendant, and

4

Foster at the scene of the murder. The State left these swabs in an evidence locker and did not process them to check for powder residue until just prior to the trial when defendant requested the analysis. As a result of this delay in processing, the results were not available until the fourth day of trial. At trial, the State's witness testified that the swab tests were inconclusive because they did not detect gunshot residue on any of the three subjects. After the close of the State's case, defense counsel moved to dismiss the case for negligent suppression of exculpatory evidence. Defendant claimed the State's delay in processing the swab results prevented her from obtaining an expert to explain the significance of these inconclusive results to the jury.

I

Did the District Court violate defendant's right to confrontation and the Montana Rules of Evidence by admitting Foster's statements when Foster was not available to testify? The challenged statements are set out in numbered order below.

1. Defendant's son Dennis and Dennis' wife Grace, both testified that they drove Foster home after the police investigation at the station on the day of the murder. They testified that during the drive, Foster told them Russell McCord had been shot at a slight downward angle, from about twelve inches away with a small caliber weapon, probably a .22, and had suffocated in his own blood. He told them that he learned these details from emergency personnel.

2. Grace testified that on the eve of the funeral, Foster

stated that he loved Russell McCord and "didn't mean to do it."

3. Dennis testified that he did not actually hear Foster's statement, but that he told Detective Comfort that Grace said to him that Foster said he did not mean to "kill" Russell McCord.

4. Grace called the police immediately after telling Dennis of Foster's statements. During the resulting interrogation, Foster feigned intoxication. The detective testified that when confronted, Foster stated he faked intoxication for "self-preservation."

5. Detectives testified regarding Foster's account of the particular time and sequence of his activities the afternoon of the homicide. His statements were inconsistent with the testimony of defendant and other witnesses.

6. Foster told detectives he was unaware that as a result of default, he and the McCords forfeited their interest in the duplex property. The State contradicted this statement at trial with other evidence.

A. Statements 1 and 2: Admissions Against Interest.

The District Court ruled that statements 1 and 2 fell within the hearsay exclusion of Rule 804(b)(3), M.R.Evid., which allows the admission of statements made by an unavailable declarant which so far tend to subject the declarant to criminal liability, that a reasonable man in his position would not have made the statement unless he believed it to be true. Defendant contends that the witnesses' account of the statements were inaccurate, mis-characterized, and did not subject Foster to criminal liability.

6

The State contends that any statement which indicates an insider's knowledge of or participation in a crime tends to subject the declarant to criminal liability. United States v. Alvarez (5th Cir. 1978), 584 F.2d 694, 700. Here, Foster's description of Russell McCord's wound and death indicate an insider's knowledge of or participation in the murder. This further suggests that the statement subjected Foster to criminal liability and would come within the statement against interest portion of Rule 804(b)(3). We conclude the court properly admitted statement 1 into evidence under Rule 804(b)(3), M.R.Evid.

In a similar manner, we conclude Foster's statement that he loved Russell McCord and did not mean to do it indicated knowledge of or participation in the crime and tended to subject him to criminal liability. At the time Foster made this statement, he knew the police considered him a suspect in the homicide. Two days prior to Foster saying that he did not mean to do it, police had extensively questioned him and swabbed his hands for powder residue. Given these circumstances, a reasonable man in Foster's position would not have made this statement unless he believed it to be true. Thus, we conclude statement number 2 was properly admitted into evidence under Rule 804(b)(3), M.R.Evid.

Next, defendant contends Foster's statements admitted as statements against interest are inculpatory, unreliable, and untrustworthy. In Rule 804(b)(3) "A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances

7

clearly indicate the trustworthiness of the statement." State v.

Powers (1988), 233 Mont. 54, 57, 758 P.2d 761, 763. The defendant

asks us to expand this rule and exclude uncorroborated inculpatory

declarations against interest.

> [I]nculpatory declarations against interest requires corroborating circumstances that "clearly indicate the trustworthiness of the statement . . ."

> * * * * * * * *

> Under Rule 804(b)(3), trustworthiness is determined primarily by analysis of two elements: The probable veracity of the in-court witness, and the reliability of the out-of-court declarant.

Alvarez, 584 F.2d at 701. We do not find it necessary to determine

whether or not uncorroborated inculpatory declarations may be

admitted. Here the State provided extensive corroboration. The

corroboration includes the following: Russell McCord's body was in

his home with no sign of forced entry; the wound was consistent

with a weapon owned by the decedent, kept in the family safe which

police never found; Foster and defendant had access to the home and

the safe; Dennis testified that Foster and the defendant were

having an affair; Russell McCord had informed Foster he would have

to move out; and finally Foster was aware that the decedent would

find out about the bleak financial situation. Further, in Alvarez

the in-court witness was a co-conspirator who turned state's

evidence in exchange for a lesser sentence. Here, Dennis and Grace

McCord, the principal witnesses, had no similar motive to testify

falsely, and were extensively cross-examined by defendant. We

conclude the evidence clearly corroborated Foster's statements.

Finally, defendant contends that statements 1 and 2 violate

her right to confrontation guaranteed by Article II, § 24 of the Montana Constitution and the Sixth Amendment of the United States Constitution. This Court has examined several factors in addressing confrontation clause violations. State v. Weinberger, (1983), 204 Mont. 278, 665 P.2d 202. In Weinberger, the Court examined Bruton v. United States (1968), 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, and held that testimony did not violate the defendant's right to confrontation where the statement was not critical to the prosecution, incriminating only in conjunction with other facts, and did not demonstrate a co-defendant's recognized motivation to shift blame to others. Weinberger, 204 Mont. at 298, 665 P.2d at 213. Next in examining Dutton v. Evans (1970), 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213, Weinberger added:

> . . . [T]he statement did not contain an express assertion about past fact; . . . [the declarant's] personal knowledge of the identities and roles of the other murder participants had been abundantly established by other evidence; and, that the possibility . . . [the declarant's] statement was founded on faulty recollection was remote in the extreme. Finally, the circumstances provided widely recognized indicia of reliability where, as here, the statement was spontaneous and where it was against . . . [the declarant's] penal interest to make it.

Weinberger, 204 Mont. at 303, 665 P.2d at 215. We conclude Foster's statements meet the requirements contained in Weinberger. First, the statements were not crucial to the State's case in light of other evidence. The statements here did not incriminate the defendant, but rather tended to incriminate Foster. Until linked by other evidence to the defendant, the primary thrust of the statements was to link Foster to the homicide. Of itself, that did

not establish that the defendant was also linked to the homicide. Additional evidence was required and was submitted by the State to establish that link. The statements were made by Foster within the two-day period after the homicide and the statements were spontaneous and against Foster's interest. We hold the trial court did not violate Rules of Evidence or the defendant's right to confrontation by admitting statements 1 and 2 in evidence.

B.   Statement 3.

Dennis McCord testified that his wife, Grace, told him that Foster did not mean to kill the deceased. The defendant did not object to this questioning of Dennis McCord. The pertinent part of Dennis' testimony is set out as follows:

[Direct exam]

> A.   I gave my statement to, I think Detective Comfort, I think is who I gave it to, and then Grace gave hers, and they gave us a ride back out, I think, that was about it.
>
> Q.   That night what did you tell Detective Comfort?
>
> A.   I said that Grace said to me that Alan just said he didn't mean to kill him.
>
> Q.   Did you say anything else?  Did you tell Detective Comfort that in your mind you had figured out the situation?
>
> A.   Oh, yeah.

> \* \* \* \* \* \* \* \* \* \*

[Cross exam]

> Q.   Do you recall on the 28th, when the police came, when the detective came out to the house after your wife said that Alan had said, I didn't mean to do it, do you recall talking to Detective Comfort at that point?
>
> A.   I gave him [Detective Comfort] a statement after

10

that.

Q. Do you recall telling him at the scene, when he was out there that what your wife told you was, I am sorry, I didn't mean to do it?

A. I think I said that my wife told me that he didn't mean to kill him.

Q. You don't recall telling Detective Comfort out at the house, I am sorry, I didn't mean to do it?

A. No. And in that case it would be semantics anyway.

Q. It would be? Do and kill mean the same thing?

A. When they are referenced that way, yes.

Here, no objection was raised to this testimony at trial. We will not put a trial court in error where that court has not been given the opportunity to rule on the admissibility of evidence and to correct itself. Section 46-20-104(2), MCA. The issues were not properly raised before the District Court. We will not consider the issues of evidence and confrontation raised on this testimony.

C. Statement 4: Then-existing State of Mind.

The trial court admitted statements 4-6 as non-hearsay statements made by a co-conspirator under Rule 801(d)(2)(e), M.R.Evid. On appeal, the State presents an alternative basis for admitting each statement. We conclude that if Foster's statements do not violate hearsay rules or defendant's right to confrontation, we will affirm the decision of the trial court regardless of its basis in admitting the statements. Phillips v. City of Billings (1988), 233 Mont. 249, 252, 758 P.2d 772, 774.

The State contends that statement 4, Foster's explanation for feigning intoxication during the police interrogation related to

11

his then existing mental or emotional condition. Thus, it was properly admitted under Rule 803(3), M.R.Evid.:

> Then-existing mental, emotional, or physical condition. A statement of the declarant's then-existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling,...), but not including a statement of memory or belief to prove the fact remembered or believed.

Here, after giving Foster a breathalizer test, police asked him why he was faking intoxication. Foster's "self preservation" statement was not to prove a fact remembered or believed, but a spontaneous response to his contemporaneous conduct of acting intoxicated. It explained the motivation for engaging in that conduct. Thus we conclude that Foster's self-preservation statement falls within the hearsay exception of Rule 803(3), M.R.Evid.

Next, defendant argues that by admitting this statement the trial court violated her right to confront the declarant. State contends admitting this statement did not violate defendant's right to confrontation. We agree that this statement meets the Weinberger criteria. First, Foster's statement was not crucial to the prosecution. The statement was based on his personal knowledge. The statement did not attempt to shift blame to the defendant. It was spontaneous and tended to show the defendant's involvement in the conspiracy only when linked to other testimony. Finally, this statement falls within a recognized exception to the hearsay rule. Weinberger, 204 Mont. at 298, 303, 665 P.2d at 213, 215. We hold that the admission of statement 4 neither violated the Rules of Evidence nor violated defendant's right to

12

confrontation.

D.   Statement 5 and 6:   Non-hearsay.

Finally, the State contends that statements 5 and 6 are non-hearsay.   Rule 801(c), M.R.Evid.   "Out-of court statements constitute hearsay only when offered in evidence to prove the truth of the matter asserted."   Anderson v. United States (1974), 417 U.S. 211, 219, 94 S.Ct 2253, 2260, 41 L.Ed.2d 21, 28-29.   Here, the State offered Foster's account of his activities the afternoon of the homicide to prove inconsistencies not to prove its truth. Likewise, Foster's statements regarding the duplex property was introduced to show its falsity.   Thus, we conclude the trial court did not violate hearsay rules by admitting statements 5 and 6.

Last, defendant contends the statements violated her right to confrontation.   Again, using the Weinberger analysis, we conclude that defendant's right to confrontation was not violated.

We hold that the court properly admitted statements 1 through 6 under the Rules of Evidence and under the confrontation clause.

II

Did the late receipt of the "swab" test results constitute negligent suppressing of exculpatory evidence, violate due process, and require dismissal of the State's case?

Defendant contends that the delay in processing the swab test results was negligent suppression of exculpatory evidence by the State, and violative of due process. Brady v. Maryland (1963), 373 U.S. 83, 83 S.Ct 1194, 10 L.Ed.2d 215.

The record discloses that defendant failed to object to this

13

evidence during the trial, and did not request the court stay the proceedings until defendant could obtain experts to analyze the results. Under § 46-20-701(2), MCA, a defendant who fails to object to an alleged error at trial must prove the error was prejudicial to her guilt or punishment, and that the prosecutor, court or law enforcement agency suppressed the evidence and prevented the claim from being raised at trial. Here the record does not support either contention. The defendant has failed to demonstrate prejudice and failed to demonstrate that the State's conduct prevented her claim from being raised. We hold the late receipt of the "swab" tests did not require dismissal of the State's case.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

14

Justice Terry N. Trieweiler specially concurring.

I concur with the result of the majority opinion and would likewise affirm the judgment of the District Court. However, I do not agree with all of the majority's reasons for its decisions. Specifically, I disagree that the statements referred to in paragraphs 1, 2, and 4 under Issue I were exceptions to the hearsay rule. I conclude that the statements were admissible because they were not hearsay at all. "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence <u>to prove the truth of the matter asserted.</u>" Rule 801(c), M.R.Evid. (emphasis added).

None of the statements referred to above were offered to prove the truth of what the out-of-court declarant had said. The issue with regard to those statements was whether they had been made at all. That issue depended on the truthfulness of the witness who testified in court that the statements had been made.

For example, the State did not offer Alan Foster's statement that he "didn't mean to do it" to prove that he unintentionally killed Russell McCord. If that statement were true, it would have been a defense to the charges against the defendant.

Because I do not believe that statements 1, 2, and 4 were hearsay, I cannot conclude that they come within any exception to the hearsay rule. I otherwise concur in the majority opinion.

_____
Justice

15