No. 92-414

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

STATE OF MONTANA,

       Plaintiff and Respondent,

  -vs-

BARI LYNNE LOSSON,

       Defendant and Appellant.

FILED

DEC 09 1993

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Arthur J. Thompson; Thompson & Sessions
          Billings, Montana

          Michael G. Eiselein, Attorney at Law,
          Billings, Montana

      For Respondent:

          Hon. Joseph P. Mazurek, Attorney General; Patricia
          J. Jordan, Assistant Attorney General, Helena,
          Montana

          Dennis Paxinos, Yellowstone County Attorney,
          Billings, Montana

Submitted on Briefs:  August 26, 1993

Decided:  December 9, 1993

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

A jury in the Thirteenth Judicial District Court, Yellowstone County, convicted Bari Lynne Losson (Bari) of mitigated deliberate homicide for the shooting death of her husband, Rick Losson (Rick). The court sentenced her to twenty years with ten years suspended, plus a consecutive six-year term for the use of a weapon. She appeals. We affirm.

The issues are:

1. Did the District Court err by admitting hearsay statements of Rick?

2. Did the District Court abuse its discretion in sentencing Bari?

3. Did the District Court err in granting the State's amended information which charged Bari, for the second time, with deliberate homicide?

Rick and Bari had a history of domestic problems. In fact, Rick beat Bari on numerous occasions and he was convicted three times for battering her.

Following a domestic disturbance, Bari purchased a .38 Special pistol. On March 13, 1990, after a day of heated argument with Rick, she used the pistol to kill him.

On that day at about 8:00 p.m., the couple was arguing. Rick charged out of the couple's trailer, yelling at Bari. Bari shot at him. She chased him down the street, continuing to fire at him with the revolver. In total, she fired six shots, hitting him once

2

in the thigh. The sixth shot penetrated his chest, killing him instantly.

The State charged Bari with deliberate homicide. She raised the affirmative defense of self-defense. Following plea negotiations, the State amended the information to charge mitigated deliberate homicide. The State agreed to recommend a sentence of thirty years, twenty-five suspended, and informed Bari it would seek an additional ten years for her use of a weapon. Bari accepted the plea agreement.

On July 10, 1991, Bari pled guilty to mitigated deliberate homicide. Sentencing was scheduled for August 29, 1991. However, the State acquired evidence which suggested Bari killed Rick to gain $106,000 in life insurance.

After an investigation, the county attorney informed defense counsel that he intended to support his argument for the ten-year use of a weapon sentence by introducing evidence to prove Bari killed Rick in an attempt to recover $106,000 in life insurance. Instead of complying with the plea agreement, Bari withdrew her plea of guilty on the charge of mitigated deliberate homicide.

In September 1991, the State recharged Bari with deliberate homicide. The State recharged her, contending that Bari killed Rick to gain $106,000 in life insurance.

The trial began on February 25, 1992. On the second day of trial, the court granted Bari's motion to exclude all evidence pertaining to the life insurance.

On March 7, 1993, the jury found Bari guilty of mitigated

3

deliberate homicide. The District Court sentenced her on March 8, 1992, to twenty years, ten suspended, plus a consecutive six-year term for the use of a weapon. She appealed on June 2, 1992.

I

Did the District Court err by admitting hearsay statements of Rick?

The State offered three people who testified to statements Rick had made before he died. The court admitted the testimony, but gave a limiting instruction immediately following each contested statement.

First, a counselor at Beta Alternatives testified that Rick had said Bari "threatened to kill him in the past." The court supplied the jury with the following instruction:

> Ladies and gentlemen, the testimony that you have just heard, to-wit, that Mr. Losson said to [a counselor] . . . that Mrs. Losson had threatened to kill him in the past, is not offered to prove the truth of the matter asserted. In other words, that she intended to do that act, but rather it is offered and its purpose is limited to show Mr. Losson's state of mind. That is the hearsay exception which it can be admitted under. Accordingly, you are not to consider the testimony for any purpose but as it regards Mr. Losson's state of mind.

Next, Rick's boss at Hardee's testified that Rick had said "Bari would kill him if he ever moved out." The court gave a similar instruction to the jury.

Finally, Rick visited an officer in the Naval Reserves to inquire about the possibility of returning to active duty status during the Dessert Storm conflict. The officer testified that Rick had said he wanted to go active because "[h]e was afraid of his wife and thought she was going to kill him." Again, the District

4

Court gave a similar instruction to the jury.

The State argues that Rick's statements were relevant because Bari asserted the claim of self-defense. We agree.

We have previously concluded that a victim's state of mind is especially relevant in a homicide case where the defendant asserts the claim of self-defense. State v. Magruder (1988), 234 Mont. 492, 496, 765 P.2d 716, 719 (citation omitted). The relevant issue is whether the victim feared the defendant. If a victim has previously announced that he was fearful of a defendant, the jury could infer from that statement that it is unlikely the victim attacked the defendant. Magruder, 765 P.2d at 719 (citation omitted). If the jury infers that it is unlikely the victim attacked the defendant, it follows that the defendant could not have acted in self-defense. Effectively, testimony about the victim's state of mind rebuts the defendant's claim of self-defense.

Here, Rick's statements to the three witnesses are relevant to the issue of whether Rick feared Bari. Bari, by claiming self-defense, opened the door for the prosecution to rebut that defense with the state of mind statements, which established Rick's fear of Bari. We hold that the three statements were relevant.

Next, Bari argues that these statements are inadmissable hearsay. We disagree.

Hearsay is a statement made out of court, which is offered in court to prove the truth of the matter asserted. Rule 801(c), M.R.Evid. Rule 801(c), M.R.Evid. reads:

5

> [h]earsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

Although the distinction between hearsay and non-hearsay state of mind statements is somewhat confusing, a leading case from the District of Columbia Court of Appeals lends clarification. U.S. v. Brown (D.C. Cir. 1973), 490 F.2d 758. That court delineated the distinction between hearsay and non-hearsay as it related to state of mind evidence. The distinction turns on whether the statement is evidence which directly proves the declarant's state of mind or whether the statement is evidence which circumstantially proves the declarant's state of mind. Brown, 490 F.2d at 762-63.

If the evidence circumstantially proves the declarant's state of mind, then the evidence is not offered to prove the truth of the matter asserted and the evidence is not hearsay. Brown, 490 F.2d at 762-63. The Brown court explained that:

> the statement "X is no good" circumstantially indicates the declarant's state of mind toward X and, where that mental state is a material issue in the case, such statement would be admissible with a limiting instruction. Technically [the statement] is not even hearsay since it is not being admitted for the truth of the matter alleged. We do not care whether X is in fact "no good" but only whether the declarant disliked him.

490 F.2d at 762-63.

Similarly, here, we conclude that the first two statements are not hearsay. The State did not introduce the statement that Bari "threatened to kill him in the past" to prove the fact that she threatened to kill Rick. Nor did the State offer the statement that "Bari would kill him if he ever moved out" to prove the fact

6

that she contemplated killing Rick if he moved out of the house.

Rather, these statements circumstantially indicated Rick's state of mind toward Bari; that he feared her. The jury was instructed not to consider whether Bari, in fact, threatened to kill or would kill Rick. Instead, the jury was instructed to consider Rick's state of mind; whether he was afraid of Bari. We hold that the first two statements were not hearsay.

Alternatively, when the evidence directly proves the declarant's state of mind, the evidence is introduced to prove the truth of the matter asserted and is hearsay. Brown, 490 F.2d at 762-63. The Brown court rationalized that:

> the statement "I hate X" is direct evidence of the declarant's state of mind and, since it is being introduced for the truth of the matter alleged, must be within some exception to the hearsay rule in order to be admissible.

490 F.2d at 763.

Here, the third statement that Rick "was afraid of his wife and thought she was going to kill him" is direct evidence of Rick's fear. The State introduced the statement to prove the truth of the matter asserted in the statement or to prove that Rick was afraid of his wife. Since the statement was offered to prove that Rick feared Bari, the statement is hearsay. However, Rule 803(3) M.R.Evid., allows an exception:

> [a] statement of the declarant's then-existing state of mind, emotion, sensation or physical condition (such as intent, plan, motive, design, mental feeling, pain and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed.

The State contends, and we agree, that the third statement

7

meets the hearsay exception of Rule 803(3), M.R.Evid. The statement was offered to explain Rick's state of mind when he sought to reenlist to active duty in the Navy. We hold that the third statement meets the hearsay exception of Rule 803(3), M.R.Evid.

Although the District Court admitted the three statements under Rule 803(3), M.R.Evid., generally, "we will affirm the decision of the trial court [if it correctly admits the statements] regardless of its basis in admitting the statements." State v. McCord (1992), 251 Mont. 317, 325, 825 P.2d 194, 200. Here, the District Court correctly admitted the statements and gave limiting instructions after admitting each statement. Since the court correctly admitted the statements, we affirm its decision.

Bari contends that the District Court should not have admitted the three statements because the statements were not trustworthy, reliable or credible. She suggests that Rick made the statements to fabricate an in-advance corroboration of the defense he planned to use the next time he was arrested for beating her. Bari argues that the court should have made a determination on the reliability, trustworthiness and credibility of the statements prior to admitting them.

Conversely, the State argues, and we agree, that the trial judge is not required to scrutinize the credibility and weight of state of mind statements prior to admitting them. Rather, "the jury is the sole judge of [the] credibility and weight" of testimony. Rule 104(e) M.R.Evid.; Commission Comments, Montana

8

Code Annotated, Rule 104(e) M.R.Evid., Title 26, Vol. 5, p. 189 (1993). The jury decides the facts and who to believe.

We conclude that Bari had ample opportunity to argue to the jury that, given the circumstances, Rick's statements were not credible. We refuse to second-guess the jury's decision.

Moreover, we have previously concluded that state of mind statements are reliable. McCord, 825 P.2d at 200. In the present case, Rick told the Naval officer that he wished to reenlist to active duty because "he was afraid of his wife and thought she was going to kill him." This statement was a spontaneous response which explained his state of mind when he sought to reenlist to active duty with the Navy.

Further, when Rick's boss inquired as to why he would not leave Bari, Rick replied that she "would kill [me] if [I] ever moved out." This was a spontaneous response to a contemporaneous inquiry as to his state of mind.

Finally, on one occasion Rick moved out of the couple's trailer home and lived at a local motel. While at the motel, he phoned his counselor. He told the counselor that Bari "threatened to kill him in the past." This statement was a spontaneous response in a phone conversation in which Rick revealed his state of mind to a counselor. We conclude that a jury could find these statements reliable.

Next, Bari contends that the prejudicial effect of the statements outweigh their probative value. We disagree.

We will not disturb the district court's evidentiary rulings

9

absent an abuse of discretion. Magruder, 765 P.2d at 718. Here, we conclude that the District Court properly weighed the competing concerns and correctly determined that the probative value of the statements outweighed their prejudicial effect. We hold the court did not abuse its discretion and it properly weighed the evidence in accordance with Rule 403, M.R.Evid.

Finally, Bari, for the first time, objects to the prosecutor's closing argument. She argues that the prosecutor improperly invited the jury to use Rick's statements to establish her state of mind. In closing, with no objection from Bari, the prosecutor said:

> She may blame all that past year of history and take it out on him the last one, you son-of-a-bitch, you [have] been beating on me for a year, do you think you are going to leave? Do you think you are going to go to the Navy? You think you are? Oh no, buddy, not after what I have been through. You are dying here tonight.

It is well established that a defendant's failure to contemporaneously object to an error precludes our review of the alleged error. State v. Rodgers (Mont. 1993), 849 P.2d 1028, 1031-32, 50 St.Rep. 335, 337. The parties must first allow the trial court the opportunity to correct the error. Rodgers, 849 P.2d at 1032.

We do not, by any means, condone the State's excerpted argument in this case. The State inappropriately used the evidence to suggest Bari's state of mind.

However, § 46-20-104(2), MCA, states that "[f]ailure to make a timely objection during trial constitutes a waiver of the objection except as provided in 46-20-701(2)." Section 46-20-

10

701(2), MCA, provides that:

> [n]o claim alleging an error affecting jurisdictional or constitutional rights may be noticed on appeal, if the alleged error was not objected to as provided in 46-20-104, unless the defendant establishes that the error was prejudicial as to his guilt or punishment and that:
>
> (a) the right asserted in the claim did not exist at the time of the trial and has been determined to be retroactive in its application;
>
> (b) the prosecutor, the judge, or a law enforcement agency suppressed evidence from the defendant or his attorney that prevented the claim from being raised and disposed of; or
>
> (c) material and controlling facts upon which the claim is predicated were not known to the defendant or his attorney and could not have been ascertained by the exercise of reasonable diligence.

Here, Bari did not object to the closing argument and, thus, she waived her objection. Further, we cannot allow Bari to raise the objection for the first time on appeal because her objection does not meet an exception under § 46-20-701(2), MCA. We hold that Bari's failure to object at trial precludes our review of the alleged error.

II

Did the District Court abuse its discretion when it sentenced Bari?

Bari argues that the District Court should have sentenced her to probation because she did not have a prior criminal record, and she posed no great risk to society at the time of sentencing. This argument lacks merit.

Where the district court has considered the factors of § 46-18-101(3), MCA, and where the sentence is within the legal limits

11

imposed by the applicable statutes, this Court will not find an abuse of discretion. State v. Almanza (1987), 229 Mont. 383, 386, 746 P.2d 1089, 1091. Mitigated deliberate homicide carries a maximum sentence of forty years imprisonment and a $50,000 fine (§ 45-5-103(4), MCA) and the maximum sentence for using a weapon is ten years (§ 46-18-221(1), MCA).

We conclude that the court followed the statutory criteria and sentenced Bari within the limits of the mitigated deliberate homicide statute, twenty years with ten suspended, and the enhancement statute for using a weapon, six years. The court gave ample justification for the sentence imposed. We hold that the District Court did not abuse its discretion in sentencing Bari.

III

Did the District Court err when it allowed the State to reinstate the charge of deliberate homicide against Bari?

Bari argues that the State breached the plea agreement, causing her to withdraw her plea. However, the facts in the record negate her argument.

The parties agreed that the State would recommend a thirty-year sentence with twenty-five suspended if Bari pled guilty to mitigated deliberate homicide. They also agreed to argue the sentence for Bari's use of a weapon at the sentencing hearing. Bari knew that the State intended to argue for the maximum ten-year sentence.

After Bari pled guilty, the State informed her that it expected to introduce recently discovered evidence to prove Bari's

12

motive in killing Rick was to gain $106,000 in life insurance. The State informed Bari that it would only use the evidence to support its argument for the maximum ten-year sentence for use of a weapon. Bari withdrew her plea.

The State did not breach the plea agreement. Rather, Bari chose to withdraw her plea. The State did not withdraw its offer to recommend thirty years with twenty-five suspended. Instead, as agreed, the State only intended to use the evidence to support its argument for the maximum ten-year use of a weapon sentence. Moreover, the State was under a duty to present the court with the concealed facts about Bari's insurance motive. See State v. Brown (1981), 193 Mont. 15, 18, 629 P.2d 777, 778-79. We hold that the State did not violate the plea agreement.

Next, Bari contends that double jeopardy should have barred the State from reinstating the charge of deliberate homicide against her. She argues that double jeopardy attached when the court accepted her initial guilty plea to mitigated deliberate homicide, which she later withdrew. Thus, she maintains that the court should have been precluded from allowing the reinstatement of the deliberate homicide charge. This argument lacks merit.

This issue is moot. See Taylor v. Kincheloe (9th Cir. 1990), 920 F.2d 599, 602. Bari was only convicted of mitigated deliberate homicide and, the jury, by implication, acquitted her of deliberate homicide. Even if Bari could challenge the deliberate homicide charge on double jeopardy grounds, we would not be compelled to overturn her conviction of mitigated deliberate homicide. See

13

Taylor, 920 F.2d at 602.

Moreover, Bari withdrew her plea, knowing that she was subjecting herself to the possibility that the State would reinstate the deliberate homicide charge. As the United States Supreme Court stated, "the Double Jeopardy Clause . . . does not relieve a defendant from the consequences of [her] . . . voluntary choice." U.S. v. Scott (1978), 437 U.S. 82, 99, 98 S.Ct. 2187, 2198, 57 L.Ed.2d 65, 79. Specifically, here, Bari cannot "reject [the] plea bargain and then erect the shield of double jeopardy," Fransaw v. Lynaugh (5th Cir. 1987), 810 F.2d 518, 526, cert. denied, 483 U.S. 1008, 107 S.Ct. 3237, to protect herself from the charge of deliberate homicide. See U.S. v. Gerard (9th Cir. 1974), 491 F.2d 1300, 1306. We hold that the District Court did not violate double jeopardy when it allowed the State to recharge Bari with deliberate homicide.

Affirmed.

_____
                              Justice

We concur:

_____
        Chief Justice

_____

_____
        Justices

14

Justice Terry N. Trieweiler dissenting.

I dissent from the majority's conclusion that out-of-court statements made by Rick Losson to the effect that his wife had "threatened to kill him," or that he was afraid "she would kill him," were not inadmissible hearsay statements.

It is clear from a review of the evidence in this case that the statements were offered for one purpose only. That purpose was to prove that defendant had planned to kill Rick Losson prior to the date on which his death occurred. To contend, as does the majority, that the jury could infer from the statements that it was unlikely that Rick would attack defendant, flies in the face of the fact that he had a criminal record for abusing and beating her, and a history of having done so for the entire one and a half years of their relationship.

Rule 801(c), M.R.Evid., reads:

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

By that definition, every one of Rick's out-of-court statements were inadmissible hearsay. They were all made by the victim, who was not there to testify, nor be cross-examined. They were all offered to prove that defendant had either threatened to kill Rick, or that he honestly believed she intended to kill him. They were offered to disprove her denial that his death was premeditated.

All the arguments about the decedent's state of mind are merely window dressing to excuse the admission of statements by someone who was not under oath and not subject to confrontation by defendant so that the veracity of the statements could be tested. Under the facts in this case, the decedent's state of mind was not an issue, and the out-of-court statements should not have been admitted.

To admit them under the pretext that they established the decedent's state of mind, and then instruct the jury not to consider whether what he said was true, is a use of smoke and mirrors to avoid the Rules of Evidence. The effect of this decision is that the state of mind exception effectively swallows the hearsay rule. The District Court's instruction did not cure the prejudice to defendant.

Therefore, I would reverse the judgment of the District Court and remand this case for retrial after excluding the inadmissible hearsay evidence.

_____
Justice